UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| CLYDE ALLEN FEE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 6:20-CV-217-REW<br><br>OPINION & ORDER |

\*\*\* \*\*\* \*\*\* \*\*\*

Clyde Allen Fee appeals the Commissioner's denial of his application for Disability Insurance Benefits (DIB). The parties filed dueling summary judgment motions. *See* DE 14, 18. The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE 18), and **DENIES** Fee's motion (DE 14) because substantial evidence supports the findings resulting in the administrative ruling, and the decision rests on proper legal standards. Fee's complaint centers on the ALJ's weighing of a contested record, but the resulting decision falls within the zone of choice afforded the ALJ.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Fee is currently 52 years old. *See* R. at 44.[2] He alleges disability beginning on December 31, 2018. R. at 27, 65. Fee applied for DIB in January 2019. R. at 27. The SSA

---

[1] Dr. Kilolo Kijakazi, replacing former Commissioner Andrew Saul (named Defendant here), "is the Acting Commissioner of the Social Security Administration." *See* Commissioner Bio, Social Security Administration, *available at* https://www.ssa.gov/agency/commissioner/ (last visited Mar. 3, 2022). Accordingly, the Court substitutes Acting Commissioner Kijakazi as titular Defendant.

[2] On the date of the hearing in 2020, Fee testified he was 50 years old and provided his full birthdate. *Id.*

1

denied his claims initially on February 21, 2019, R. at 27, 90, and upon reconsideration on May 24, 2019, R. at 27, 99. Following Fee's June 2019 request, ALJ Joyce Francis held a hearing on January 28, 2020. R. at 27, 106. At the hearing, attorney Ronald C. Cox represented Fee. R. at 27. Fee and impartial vocational expert (VE) Charles E. Wheeler testified. R. at 27. ALJ Francis subsequently denied Fee's claims on February 24, 2020. R. at 35. The Appeals Council denied review, and thus upheld the ALJ's decision, on September 24, 2020. R. at 1–3.

The ALJ made several particular findings in the required sequence.[3] She determined that Fee had not engaged in substantial gainful activity since his December 31, 2018, alleged onset date. R. at 29. The ALJ next determined that Fee had three particular severe impairments. R. at 30. However, ALJ Francis then found that Fee did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at 30. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 30-34. Although ALJ Francis found that Fee was "unable to perform [his] past relevant work," she, with VE testimony in support, determined that, given Fee's particular characteristics and RFC, "there are jobs that exist in significant numbers in the national economy that [Fee] can perform[.]" R. at 34-35. Based on these considerations, the ALJ ruled that Fee was not under a disability from December 31, 2018, through the date of decision. *See* R. at 35. Dissatisfied with the result of the SSA's subsequent administrative process, which denied him relief, Fee turned to federal court for review.

---

[3] The ALJ—as a predicate for a period of disability (per 42 U.S.C. § 416(i)(2)(C)) and disability benefits (per 42 U.S.C. § 423(a)(1)(A))—found that Fee satisfied the §§ 416(i)(3) & 423(c)(1) insured-status requirements through June 30, 2023. R. at 28.

2

**II.    ANALYSIS**

    A.    Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[4] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* General Order 13-7, at ¶ 3(c), https://www.kyed.uscourts.gov/sites/kyed/files/Social_Security_Standing_Order.pdf, ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual findings and whether the ALJ properly applied relevant legal standards. *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

---

[4] That is, those records relevant to the particular issues Fee presents for review.

3

to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might, as an original exercise, have decided the case differently. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4)(iii). At Step 4, the ALJ defines RFC and considers whether the claimant can perform past relevant work. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Clendening v. Comm'r of Soc. Sec.*, 482 F. App'x 93, 96 (6th Cir. 2012) (citing *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)). Finally, at Step 5, when the production burden shifts to the Commissioner, if the claimant cannot perform past relevant

work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

B.  <u>The ALJ did not reversibly err.</u>

Fee argues that ALJ Francis: (1) "failed to properly address the opinion of Plaintiff's treating physician, Dr. Gregory Dye," as well as the opinions of Dr. David Muffly, and Sarah Godbey PA-C, DE 14-1 at 17; (2) "completely disregarded" Plaintiff's current age over 50 years and the impact of the "grid rules" or the Medical Vocational Guidelines, DE 14-1 at 18; (3) "failed to properly evaluate plaintiff's subjective complaints" of pain, DE 14-1 at 20; and (4) somewhat redundantly, that ALJ Francis's determination is not supported by substantial evidence, DE 14-1 at 19. The Court evaluates each in turn.

*Medical Source Opinions*

Fee asserts that the opinions of Dr. Dye, Sarah Godbey, PA-C, and Dr. David Muffly should have been given greater or different weight and consideration by ALJ

5

Francis. Fee argues that the ALJ improperly discounted these opinions and "relied on the opinions of non-examining state agency consultants who did not have the benefit of the Claimant's treatment records or MRI scans . . . ." DE 14-1 at 18. In the Court's view, for clearly articulated reasons, ALJ Francis found the Dye and Godbey opinions unpersuasive and contrary to available objective medical evidence regarding Fee's impairments and physical ability. Judge Francis disregarded the Muffly opinions (though largely consistent) as pertinent to state workers' compensation, rather than the SSA rubric.

In July 2019, Dr. Dye completed a checkbox-style form indicating Fee's ability to do work-related activities. R. at 450. Dr. Dye indicated that "[Fee] could lift and carry less than 20 pounds, could stand and/or walk for less than two hours in an eight-hour day, could sit for less than two hours in an eight-hour day, and could never perform any postural activities." R. at 33, 450-51.

Sarah Godbey, PA-C offered a similar assessment of Fee's condition. Ms. Godbey indicated that Fee "could lift up to 15 pounds, could stand and/or walk for four hours in an eight-hour day, could sit for two hours in an eight-hour day, and could never climb, balance, crouch or crawl." R. at 33, 465-67. As the Commissioner indicates in briefing, ALJ Francis correctly disregarded the opinion of Dr. Muffly as it was given as part of a workers' compensation determination. *See* R. at 34, 444. Current regulations make clear that "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1); *see also*

6

§ 404.1504 (identifying workers' compensation determinations as nonbinding). The Court thus continues analysis only of Dr. Dye and Ms. Godbey's opinions.[5]

First, the standard. Plaintiff does not back his argument with citation to authority, but the substance indicates that Fee is asserting a violation of the so-called "treating-physician rule," at least as to Dr. Dye. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 544 (6th Cir. 2004). Under this rule, an ALJ generally must give "greater deference" to "the opinions of treating physicians than to those of non-treating physicians." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, Fee filed his petition after March 27, 2017—new regulations supplant the treating physician rule and impose different standards. *See* 20 C.F.R. § 404.1520c. The regulations, to which ALJ Francis adhered, now state that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* at § 404.1520c(a). Factors for an ALJ to consider in weighing medical evidence and opinions are supportability, consistency, relationship with the claimant, specialization, and any other factor that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* at § 404.1520c(c)(1)-(5). The most important of these are supportability and consistency. *Id.* at § 404.1520c(a); *see also Russell v. Kijakazi*, No. 3:20-CV-00852-BJB-RSE, 2022 WL 635427 at *2-3 (W.D. Ky. Feb. 4, 2022) (recognizing that the new regulations discard "the defunct treating physician rule").

---

[5] Fee does not grapple with or object to this procedural reasoning. The Muffly input, which the ALJ viewed as compatible with the record, in any event, would not have had impact on the RFC as formulated.

Nonetheless, an ALJ must evaluate all medical and treating source opinions provided by the claimant. *See, e.g.*, 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). That happened. *See* R. at 33. Judge Francis found the Godbey and Dye opinions "unpersuasive[,]" but she certainly did not ignore them. Moreover, substantial evidence supports her assessment and conclusion.

ALJ Francis fully considered Dr. Dye's opinion and found it unpersuasive for several reasons. Dr. Dye treated Fee for only a short time, about seven or eight months, R. at 56, offered no supporting evidence or rationale for his opinions (briefly citing to an MRI and Fee's "increased pain" without further explanation), R. at 450-51, and used a simple checkbox form to report Fee's ability to work. ALJ Francis found Dr. Dye's opinions contradictory "to the restrictions placed on the claimant by the neurosurgeon who actually performed the surgery" and "grossly inconsistent with the conservative nature in which [Fee] has been treated . . . ." R. at 33. Similarly, ALJ Francis noted that Ms. Godbey's opinions were inconsistent with, and not supported by, objective medical evidence and Fee's conservative treatment. R. at 33. Ms. Godbey also used a checkbox form like Dr. Dye and saw Fee only twice. R. at 33, 405, 409. An opinion's consistency, or lack thereof, "with the record as a whole" is a recognized, valid factor in the weighing calculus. 20 C.F.R. § 404.1527(c)(4). The record fully supports the ALJ's inconsistency finding.[6]

---

[6] Dr. El-Naggar performed a kyphoplasty on Fee in July 2018, and he and his staff saw Fee several times in follow-up visits. R. at 405. At one such follow-up, on January 24, 2019, staff (Godbey) indicated that "[p]atient continues to have significant LBP [lower back pain] that radiates to the hips" and that Fee "will have a permanent weight restriction to not lift push or pull more than 15 pounds." R. at 405-06. However, in every single visit to Dr. El-Naggar's office, providers indicated "normal muscle tone in all extremities, normal muscle bulk in all extremities, no tremor." R. at 405-11, 427-31. Every progress note also indicated Fee could ambulate without assistance. *See id.* One provider at Dr. El-Naggar's office did not think that further surgery was necessary or suggest any more aggressive treatment

8

The relatively short treatment period or limited interaction that Dr. Dye and Ms. Godbey experienced with Fee—seven months and about two visits, respectively—presents a fair discounting basis, given the chronic nature of Fee's claimed pain associated with his surgery. *See, e.g.*, 20 C.F.R. § 404.1527(c)(2)(i) & (ii) (listing, as factors for opinion evaluation, "frequency of examination[,]" as well as the length, "[n]ature and extent of the treatment relationship").

In addition, Dr. Dye's assessment is inconsistent not only with the overall record, but with *his* treating notes. A November 2019 office visit with Dr. Dye reported that Fee had no pain in his right sacroiliac joint and a full, pain-free range of motion on lateral flexion of the lumbar spine. R. at 456. The report also states that Fee could perform flexion, extension, and lateral bending of the lumbar spine with no restriction. His "full" ROM was "pain free." *Id.* These assessments are a stark contrast to Dr. Dye's later conclusion that Fee could perform no postural activities.[7] As to Ms. Godbey's purported limitations on Fee's physical ability, all the progress notes from Dr. El-Naggar's office indicated that Fee had normal muscle tone, muscle bulk, and muscle strength, indicating significant regularity in movement and ability. R. 405, 427, 429, 431. Records also indicate that Fee has a full range of motion in his spine without pain. R. at 456;[8] *see also* R. at 462 (indicating moderately reduced range of motion in lumbar spine). The limitations suggested by Ms. Godbey on the medical assessment form simply do not match up with this record. The

---

beyond pain medication. R. at 428 ("I discussed with the patient that our only option is to refer him to a pain clinic for chronic pain.").

[7] On the first visit, it seems that Dr. Dye fixed his view, indicating a 10 lb. lift restriction that "is permanent." R. 436. Not so, even in Dye's records.

[8] This same record also indicates an "active painful ROM" in the lumbar spine in the same sentence. R. at 456. This internal inconsistency mirrors some of the consistency problems ALJ Francis noted in discounting Dye's views.

record backs up ALJ Francis's credibility findings as to Dr. Dye and Ms. Godbey and her conclusions are supported by substantial evidence. She made no error in assigning less weight and authority to the opinion of either Dr. Dye or Ms. Godbey and gave good reasons for doing so.

Although Fee criticizes Judge Francis, he does so in generic fashion. The ALJ conducted the hearing, viewed Fee, and took into account the credibility of Fee's testimonial reports on limitations (such as that he could walk only about the length of a basketball court, R. 51) relative to the full record concerning ADLs and other activities. She weighed the conclusions between the surgeon, the Dye and Godbey views, and the experts at the state agency, particularly Dr. Matar. *See* 20 C.F.R. § 404.1513a(b)(1) (directing that the ALJ must consider medical evidence from "Federal or State agency medical or psychological consultants . . . because [such consultants] are highly qualified and experts in Social Security disability evaluation."); *see also Miller v. Commissioner of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) ("State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.'"). Francis knew the full history, including that Fee worked all the way until an economic lay-off and repeatedly tested, across the providers, in ways that simply do not validate the degree of limitations he here proffers. There was certainly evidence going both ways, but it is the province of the ALJ to weigh the proof, under the standards, and decide the case. This, the Judge defensibly did.

*Fee's Age and the "Grid Rules"*

Fee next argues, in two sentences, that the ALJ "failed to address the grid rules for an individual of the Plaintiff's age." DE 14-1 at 18. The "grid rules" are the Medical-

Vocational Guidelines. *See* 20 C.F.R. § 404.1569. If the characteristics of a claimant match one of the descriptions in the rules, then the grid is used to determine whether there are jobs in the national economy for that person or whether he or she is disabled. *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). However, where, as here, the claimant does not match a specific rule "[his] residual functional capacity (light work) is used as the appropriate framework to determine whether [he] is disabled." *Id.* (citing *Kirk v. Sec. of Health & Human Svcs.*, 667 F.2d 524, 530 (6th Cir. 1981)). Fee somewhat inaccurately argues that he "meets the Grid Rule for closely approaching advanced age" without citing any specific rule.

ALJ Francis determined that on the alleged onset date, Fee was 49 years old, placing him in a younger individual category, but then stated that Fee "subsequently changed age category to closely approaching advanced age." R. at 34. Contrary to Fee's assertion, the ALJ squarely addressed Fee's age and age classification. As to the grid rules, the ALJ determined that whether or not Fee's skills are transferrable, the grid rules dictate a finding of not disabled. *Id.* Looking to Table 2 in the appendix for light work and considering Fee's high school education+ and his status as closely approaching advanced age, the ALJ is correct—the grid rules provide for a finding of not disabled regardless of skill transferability. *See* 20 CFR Part 404, Subpart P, Appendix 2. Presumably, Fee is arguing that he should have been classified as having an RFC limited to sedentary work, *see* DE 14-1 at 19, which may provide for a finding of disabled for a person closely approaching advanced age. *See id.* But, as Fee has neither developed nor supported such an argument, it is surely waived. "It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) (internal citations and quotation marks

11

are omitted). Further, the Court has already determined that ALJ Francis's RFC findings, particularly that Fee can perform light work with some restrictions, are supported by substantial evidence.

*Fee's Argument Regarding Pain*

Next, Fee asserts that "[t]he ALJ erred by not considering the Plaintiff's pain [.]" DE 14-1 at 20. Subjective complaints of pain may support a claim of disability. *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986). "In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal quotations omitted). "Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.*; *see also Duncan*, 801 F.2d at 852 ("[D]eterminations of credibility related to subjective complaints of pain rest with the ALJ" and "the ALJ's opportunity to observe the demeanor of the claimant is invaluable, and should not be discarded lightly.") (internal citations omitted) (cleaned up). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. A claimant's statements regarding "pain or other symptoms will not alone establish that [he is] disabled . . . ." 20 C.F.R. § 404.1529(a).

Where, as here, a claimant's symptoms—such as pain—and not the underlying condition form the basis of disability, the ALJ applies a two-step analysis. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). First, the ALJ must determine whether "objective medical evidence confirms the severity of the alleged pain arising from the condition." *Id.* Second, the ALJ must consider "whether the objectively established medical condition is of such a severity that it can reasonably be expected to

12

produce the alleged disabling pain." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Under this second step, the ALJ can consider the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; treatment received for pain or other symptoms; any measures the claimant has taken to alleviate pain; and any other factor concerning the claimant's functional limitations. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *see also* SSR 16-3p, 82 Fed. Reg. 49462 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).

ALJ Francis cited and applied this exact standard. *See* R. at 31. She looked not only to the objective medical evidence, but to the examination history and Fee's own testimony about his pain, daily activities, and treatment. During the hearing, Fee testified he typically drives four miles at a time, twice per week. R. at 31, 45. He said his pain is worsened by walking, but that he has no problems with personal care, can prepare meals for himself, does light household chores once or twice a week, and shops for groceries once a month. R. at 31, 52. Fee stated he does no yard work, participates in no social activities, cares for no children, grandchildren, or pets, and participates in no hobbies or activities. R. at 52. Fee testified he can walk for five or six minutes, can stand for 10 to 15 minutes, sit for 20 to 30 minutes, and can lift or carry 10 to 15 pounds. R. at 31, 51. To alleviate some of his pain, Fee takes a prescribed Ibuprofen and must lie down five or six times a day, for forty-five minutes to an hour at a time. R. at 32, 57. He also participated in physical therapy and worked "light duty" until he was laid off in December 2018. R. at 54, 56. Notably, Fee did not testify that he left this job because his pain was too great or that his condition worsened.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found Fee's statements

13

regarding the intensity and limiting effects of his pain unpersuasive. R. at 31. First, Fee's claims of pain were inconsistent with the objective medical evidence and the overall record. As noted earlier, visits to the neurosurgeon consistently indicated normal muscle tone, muscle bulk, and muscle strength. R. at 32, 405, 407, 409, 411, 427, 429, 431. Records indicate Fee was able to ambulate without assistance and has a full range of motion in his spine without pain. R. at 32, 427, 429, 432, 456. Fee's neurosurgeon prescribed him 800mg Ibuprofen. R. at 406.

Fee's complaint is that the ALJ ignored or mis-weighed his pain complaints. ALJ Francis went through the required rubric. She viewed and evaluated Fee's testimony against a backdrop of ADLs in the record and the full medical story. She granularly compared the hearing proof to the lengthy treatment history and Fee's testing and reports over the course of time. Again, there is proof, largely from Fee, that would suggest a different and more restricted conclusion—the ALJ, however, reached a rational and well-supported set of reasonable findings premised on consistency and credibility in the proof. Judge Francis did not improperly consider Fee's pain; indeed, she faithfully followed the § 404.1529 rubric. Importantly, as the ALJ noted, Fee was on light work duty at his prior job—this is strong evidence that he is capable of performing some work even with his physical limitations. *See Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("Allegations of pain, however, do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment."); *Goodall v. Astrue*, No. 3:08-CV-236, 2009 WL 1765456 at *5 (finding that testimony that the claimant could cook once per day, grocery shop twice per month, do laundry, drive twice a week, walk for exercise, swim in the

summer, and get dressed without difficulty supported ALJ's finding that claimant was not disabled).

*Substantial Evidence*

As a last-ditch effort, Fee argues that the ALJ's "determination that the Plaintiff is not disabled is not supported by substantial evidence." DE 14-1 at 19. Though citing several cases broadly articulating the appropriate standard, Fee makes no real argument on this issue. This portion of Fee's motion really is an abstract of his arguments as to the ALJ's processing of the pain proof and the medical source opinions; the Court has already rejected those forays. With no other basis to overturn the ALJ's decision, the Court rejects this assertion as well.

### III. Conclusion

For all these reasons, the Court **DENIES** DE 14 and **GRANTS** DE 18. The Court will enter a separate Judgment.

This the 11th day of July, 2022.

Signed By:
*Robert E. Wier*
United States District Judge